UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

COZAD TRAILER SALES LLC., a
California limited liability
company,

        Plaintiff,

   v.

RACKLEY BILT TRAILER SALES,
INC., a California
corporation, DANNY RACKLEY, an
individual, and VARIOUS JOHN
or JANE DOES and XYZ
COMPANIES,

        Defendants.

NO. CIV. S-05-1181 WBS DAD

ORDER RE: MOTION FOR SUMMARY JUDGMENT

----oo0oo----

On June 14, 2005, plaintiff Cozad Trailer Sales, LLC brought suit against defendants Rackley Bilt Custom Trailers, Inc. and Danny Rackley, alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), and California Unfair Competition laws, Cal. Bus. & Prof. Code §§ 17200-17203, 17500, 17535. Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

///

1

I.   <u>Factual and Procedural Background</u>

Plaintiff is a leading manufacturer of low-bed heavy haul industrial trailers and has been in the business since the mid-1950s. (Pl.'s Separate Statement of Disputed and Undisputed Facts ¶¶ 1, 3.) For approximately 20 years, defendant Rackley purchased plaintiff's trailers, which, among other design elements, "featur[e] four to six inch <u>round</u> holes placed proportionately in the side web of the trailer assembly." (<u>Id.</u> ¶ 8.) Around 2000, however, Rackley formed Rackley Bilt Custom Trailers and began to manufacture trailers in a style similar, if not identical, to that plaintiff's trailers. (Compl. ¶ 18.)

Plaintiff first realized that defendants had embarked on their own trailer manufacturing venture in March, 2005, when it inspected a parked trailer that was observed sagging under the weight of its load. (<u>Id.</u> ¶ 19.) Plaintiff feared that "one of its own products was in imminent threat of collapse . . . ." (<u>Id.</u>) However, after a closer look, plaintiff's general manager "surmised that, despite its similarity of design . . . the trailer had not . . . been manufactured by Cozad." (<u>Id.</u>) Further investigation revealed that the trailer was purchased from defendants. (<u>Id.</u>) Plaintiff sent a cease and desist letter to defendants on May 19, 2005, and filed suit when defendants, in spite of plaintiff's protests, continued to produce their allegedly infringing trailer design. (<u>Id.</u> ¶ 20.)

Although many of the early filings in this case, including a temporary restraining order stipulated to by the parties, focused on the proportionally spaced round holes found on the trailer frames, plaintiff clarified in its opposition to

2

defendants' motion for summary judgment that its trade dress claims are based on more than just round holes.  Specifically, in addition to the holes placed throughout the webbing, plaintiff also claims that defendants copied plaintiff's "gooseneck V-latch system which connects the neck of the trailer to the towing truck," the angled design of the suspension, and the unique shape of the steering mechanism.[1]  (Pl.'s Mot. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. at 3-4; Galloway Decl. ¶ 4.)  To redress these alleged injuries, plaintiff seeks both injunctive and monetary relief.

## II. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material

---

[1] Although the holes have been the main focus of this litigation until now, plaintiff did allege in its complaint that "No other manufacturer of low-bed heavy haul industrial trailers uses the same stylized design element<u>s</u> as Cozad."  (Compl. ¶ 15 (emphasis added).)  This language seems to support an argument that round holes are not now, nor were they ever, the only trade dress element at issue.  Given the liberal federal pleading standard, <u>see</u> Fed. R. Civ. P. 8(a), the court finds that this language provided defendants with sufficient notice that additional elements were part of plaintiff's trade dress claim.

3

1 fact and can satisfy this burden by presenting evidence that
2 negates an essential element of the non-moving party's case.
3 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
4 Alternatively, the movant can demonstrate that the non-moving
5 party cannot provide evidence to support an essential element
6 upon which it will bear the burden of proof at trial.  Id.

7              Once the moving party meets its initial burden, the
8 non-moving party must "go beyond the pleadings and by her own
9 affidavits, or by 'the depositions, answers to interrogatories,
10 and admissions on file,' designate 'specific facts showing that
11 there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R.
12 Civ. P. 56(e)).  The non-movant "may not rest upon the mere
13 allegations or denials of the adverse party's pleading."  Fed. R.
14 Civ. P. 56(e); Valandingham v. Bojorquez, 866 F.2d 1135, 1137
15 (9th Cir. 1989).  However, any inferences drawn from the
16 underlying facts must be viewed in the light most favorable to
17 the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd.
18 v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In addition,
19 the court must not engage in credibility determinations or weigh
20 the evidence, for these are jury functions. Anderson, 477 U.S. at
21 255.

22              The substantive law governing a case determines the
23 materiality of a fact.  T.W. Elec. Serv., Inc. v. P. Elec.
24 Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Therefore,
25 because this case is governed by the law on trade dress, the
26 court must consider the facts relevant to (1) whether the product
27 design is non-functional, (2) whether the design is inherently
28 distinctive or has acquired a secondary meaning, and (3) whether

4

there is a likelihood of confusion. <u>Disc Golf Ass'n, Inc. v. Champion Discs, Inc.</u>, 158 F.3d 1002, 1005 (9th Cir. 1998). If the court finds that the design is functional though, the inquiry ends there. <u>Traffix Devices, Inc. v. Mktg. Displays, Inc.</u>, 532 U.S. 23, 33 (2001).

III. <u>Discussion</u>

    A.   <u>Functionality</u>

In the Ninth Circuit, trade dress "refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture, or graphics." <u>Int'l Jensen, Inc. v. Metrosound U.S.A.</u>, 4 F.3d 819, 822 (9th Cir. 1993). But trade dress <u>protection</u> under the Lanham Act extends only to non-functional product features or, when a collection of features is at issue, elements that taken together are non-functional. <u>Fuddruckers, Inc. v. Doc's B.R. Others, Inc.</u>, 826 F.2d 837, 824 (9th Cir. 1987); <u>Clicks Billiards Inc. v. Sixshooters Inc.</u>, 251 F.3d 1252, 1260 (9th Cir. 2001) (noting that functional elements can be arranged in a "tapestry of visual effects" that constitutes protectable trade dress). "[A] product feature is functional if it is essential to the [product's] use . . . or if it affects the cost or quality of the article." <u>Inwood Labs., Inc. v. Ives Labs., Inc.</u>, 456 U.S. 844, 850 n.10 (1982). Such features "constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." <u>Vuitton Et Fils S.A. v. J. Young Enters., Inc.</u>, 644 F.2d 769, 774-75 (9th Cir. 1981) (quoting <u>Int'l Order of Job's Daughters v. Lindeburg & Co.</u>, 633 F.2d 912, 917 (9th Cir. 1980)).

5

Functionality is determined by looking at "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." Clicks Billiards, 251 F.3d at 1260 (quoting Disc Golf, 158 F.3d at 1006). Here, the evidence presented by the parties to address these factors reveals a factual dispute. While defendant Rackley claims that the size and placement of round holes in the trailer webbing constitutes a functional element that provides "flexible tie down configurations," David Galloway, plaintiff's general manager, states that "[l]oads should not be tied down by chain or straps passed through the round holes . . . because . . . the load will not be safely secured." (Rackley Decl. ¶ 7; Galloway Decl. ¶ 8.) According to Galloway, tie down functionality is provided instead by D-rings installed along the webbing and positioned according to customer specifications. (Galloway Decl. ¶¶ 8-9.)

Additionally, while Rackley states that the holes are functional in that they lighten the weight of the trailer without sacrificing structural integrity, Galloway asserts that its holes are not included to reduce the weight of the trailer. (Rackley Decl. ¶ 8; Galloway Decl. ¶ 7.) Finally, while Rackley claims that holes in the webbing are an essential feature and round holes are most cost effective, plaintiff's expert, David Fletcher, disagrees. (Rackley Decl. ¶ 11; Fletcher Decl. ¶ 6.) Flether opines that a trailer without holes is the most structurally sound design, given that the trailer's essential

6

purpose is to "hold, carry and bear a specified range of load measured by weight or tonnage." (Fletcher Decl. ¶¶ 5-7.) Thus far, the court has before it only evidence of disputed issues of material fact regarding the Clicks Billiards functionality test.

Defendants also present a letter from one of their customers[2] that specifically requests that round holes be placed throughout the trailer. (Rackley Decl. Ex. A (Delta Star Letter).) The letter details the functional advantages that have led this customer to prefer round holes. (Id.) However, in light of plaintiff's affidavits, the court cannot make a finding regarding functionality at this time. To do so would involve a credibility determination, something that is beyond the scope of the court's role.[3]

Furthermore, even if defendants' customer has

---

[2] Although the undated Delta Star letter might, as an out of court statement offered to prove the truth of the matter asserted, be a classic example of hearsay, the court finds reliance on it justified for two reasons. First, because the letter is on company letterhead, discusses business matters, and is addressed to the party who has offered it into evidence, the letter might be admissible under the business records exception. See Fed. R. Evid. 803(6). Second, plaintiff did not object to the letter attached to the Rackley Declaration and it is consequently admissible at this stage. See Young v. Allstate Ins. Co., 296 F. Supp. 2d 1111, 1114 (D. Ariz. 2003) ("[D]istrict courts in the Ninth Circuit must consider even inadmissible evidence at the summary judgment stage unless a party has . . . objected to it.").

[3] As discussed during oral argument, the court will not address the photographs of plaintiff's "Client of the Month", allegedly depicting plaintiff's client using the round holes in the webbing for tie downs. (Oct. 24, 2005 Meath Decl. Attachs. A-C.) Given the size and quality of these exhibits, the court cannot determine with any degree of certainty whether the straps go through the holes or are tied to some other object attached to the web. Moreover, several of the pictures come from plaintiff's customer's website and therefore do not prove that plaintiff promotes functional use of the holes.

7

specifically requested round holes because it has found a functional use for them, this evidence does not negate an essential element of plaintiff's case. "[A] trademark which identifies the source of goods and incidentally serves another function may still be entitled to protection." Vuitton Et Fils, 644 F.2d at 775 (discussing aesthetic trademarks); Chrysler Corp. v. Vanzant, 44 F. Supp. 2d 1062, 1070 (C.D. Cal. 1999) (observing that "mere existence of utility" does not preclude trademark protection). The ultimate question the court must resolve in a trade dress case is whether the dress was designed to serve a source identifying purpose. Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 785 (9th Cir. 2002). The parties' conflicting declarations on this matter lead the court to conclude that disputed issues of material fact remain at this stage in the case.[4]

B. Distinctiveness

Defendants' motion for summary judgment does not end with the court's inability to make a finding regarding functionality. Even if a trade dress is non-functional, "the plaintiff must still show that the mark or dress is either

---

[4] Defendants further argue that because "[v]arious manufacturers [have used] proportionately spaced holes of various shapes and sizes including triangular, oval, square, rectangle, and trapazoidical," holes in the side webbing of a trailer must be functional. (Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. at 5.) However, this evidence might also suggest that the shape, size, and configuration of holes in the webbing is a common method of distinguishing trailers based on structure, given that a trailer's appearance might be cosmetically re-branded by the manufacturers' customers. (See, e.g., Oct. 24, 2005 Meath Decl. Attach. C at 3 (Cozad trailer owned by Taylor Heavy Haul).) This evidence submitted regarding functionality is inconclusive.

8

distinctive or has a secondary meaning." Int'l Jensen, 4 F.3d at 824. These are alternative standards, but the Supreme Court has held that a product design, like the trailer design at issue here, cannot qualify as inherently distinctive. Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 214 (2000); see also Int'l Jensen, 4 F.3d at 824. Product design is protectable "only upon a showing of secondary meaning." Id. at 216.

However, defendants apparently assumed that their functionality argument would succeed and consequently argued only that "secondary meaning need not be considered." (Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. at 17.) Given the lack of any arguments from either side on this matter, the court cannot make a finding as a matter of law that the design of plaintiff's trailers carries no secondary meaning.[5]

C. Likelihood of Confusion

Regardless of whether a trade dress is non-functional and distinct, plaintiff must still demonstrate "the core element of trademark infringement"--that defendants' use of the dress is likely to confuse customers. Int'l Jensen, 4 F.3d at 825

---

[5] Rather than make a "secondary meaning" argument, defendants argued that the use of proportionally spaced round holes was widespread in the trailer industry, such that their use was generic. (Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. at 9-10.) Defendants collected several sample images of other trailers with round holes. (Aug. 30, 2005 Meath Decl. Apps. A-E.) However, other design elements, in addition to the size, spacing, and number of the holes in these examples, distinguish them from the two trailer designs at issue in this case. This evidence is not inconsistent with plaintiff's claim that the "size, number, selection, spacing and design of round holes in the side web of [defendants'] trailer" infringes on plaintiff's trade dress. (Compl. ¶ 14.) Whereas plaintiff's and defendants' trailers are strikingly similar, the same cannot be said about the examples offered by defendants.

9

1 (quoting <u>E. & J. Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280,
2 1290 (9th Cir. 1992)).  "A likelihood of confusion exists when
3 consumers 'are likely to assume that a product or service is
4 associated with a source other than its actual source because of
5 similarities between the two sources' marks or marketing
6 techniques.'"  <u>Int'l Jensen</u>, 4 F.3d at 825 (quoting <u>Metro Publ'g,
7 Ltd. v. San Jose Mercury News</u>, 987 F.2d 637, 640 (9th Cir.
8 1993)).

9          Courts consider several factors when evaluating
10 likelihood of confusion, including: (1) the strength of the
11 dress, (2) the similarity of the dresses, (3) evidence of actual
12 confusion, (4) the marketing channels used, (5) the type of goods
13 and the sophistication of the purchaser, and (6) defendant's
14 intent in selecting the mark.  <u>Vision Sports, Inc. v. Melville
15 Corp.</u>, 888 F.2d 609, 616 (9th Cir. 1989).  Here, defendants'
16 evidence appears to address the second and fifth factors.
17 (Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. at 17-21.)
18 Defendants also allege, without evidentiary support, that they
19 did not intend to copy plaintiff's dress for the purpose of
20 misleading customers, but rather engaged in copying because
21 plaintiff's design offered superior functionality.  (<u>Id.</u> at 21-
22 22.)

23          Regarding the second factor, similarity of dress,
24 defendants claim that because they brand their trailers with
25 Rackley stickers and mud flaps, consumer confusion is improbable.
26 (<u>Id.</u> at 18, 20.)  Plaintiff does not dispute that Rackley uses
27 source-identifying labels on its products, but offers evidence
28 that these identifiers are at most temporarily effective because

10

of their potential to wear away or be removed.  (Galloway Decl. ¶ 12 (according to Galloway, mud flaps "are often destroyed or removed and/or replaced by the purchasing customer" and "[s]mall decals wash off under pressure washing" ).)  In addition, plaintiff notes that the small size of the labels makes them an inadequate means for avoiding customer confusion.  (Id. ("[D]ecals and badges are hard to see and customers are unlikely to pay close attention to what they say.").)

"[I]n the Ninth Circuit . . . 'post-purchase confusion,' i.e. confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act."  Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848 (9th Cir. 2002) (citations omitted).  Therefore, plaintiff's arguments citing the potential for confusion outside the sale setting are relevant and preclude an award of summary judgment based on defendants' use of source-identifying labels.  If, as plaintiff's affiant asserts, these labels are indeed temporary or hard to see, then only the trailer's structural design remains to identify its source. Given the striking resemblance between plaintiff's and defendants' unadorned trailers, (compare  Pistacchio Decl. Ex. E (Cozad trailer), with id. Ex. F (Rackley trailer)), a reasonable jury member could find a likelihood of confusion.

Regarding the fifth factor, purchaser sophistication, defendants further argue that customers purchasing custom built trailers manufactured by defendants are unlikely to be confused and think they are instead contracting for plaintiff's product.

11

1  (Defs.' Mem. of P. & A. in Support of Mot. for Summ. J. at 19-
2  20.)  In support, defendants offer into evidence a copy of one of
3  their advertisements, which explains that "Rackley Bilt Custom
4  Trailers" "Build[s] Lowbed Trailers and Specialized Dollies."
5  (Rackley Decl. Attach. C).  From this evidence, however, the
6  court cannot say with certainty that defendants' customers know
7  that "custom built" means "manufactured" and not simply
8  "assembled."  Drawing all inferences in favor of the non-moving
9  party, as the court must in a motion for summary judgment, the
10 court cannot hold that defendants' customers know that their
11 trailers are unaffiliated with plaintiff based on these facts.
12          Additionally, the court cannot resolve the likelihood
13 of customer confusion issue in favor of defendants on the
14 sophistication of defendants' purchasers alone.  The court
15 recognizes that sophisticated purchasers of expensive goods are
16 assumed to be capable of finding "exactly what they are searching
17 for."  Interstellar Starship Servs., Ltd. v. Epix Inc., 184 F.3d
18 1107, 1110 (9th Cir. 1999) (citing AMF, Inc. v. Sleekcraft Boats,
19 599 F.2d 341, 353 (9th Cir. 1979) (holding that expensive goods
20 and sophisticated purchasers cut against a likelihood of
21 confusion)).  Such customers are likely involved here, for if
22 plaintiff's prices are typical, the trailers at issue cost
23 anywhere from $90,000 to $400,000.  (Pistacchio Decl. ¶ 6.)
24 However, when, as in this case, "the [dress is] quite similar, .
25 . . the care and skill which a purchaser will have used when
26 deciding which instrument to buy will not have necessarily
27 extended to his decision regarding which retailer to buy from."
28 Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music

1 Ctr., 109 F.3d 275, 286 (6th Cir. 1997).  Under such
2 circumstances, this factor has at best a minimal impact on the
3 likelihood of confusion analysis.  Id.
4 IV. Conclusion
5       Defendants have failed to present sufficient evidence
6 to show that plaintiff will not be able to demonstrate customer
7 confusion at trial.  Moreover, questions of fact remain regarding
8 whether the similar design elements of plaintiff's and
9 defendants' trailers constitute non-functional trade dress and
10 whether defendants' product labels are sufficient to avoid
11 customer confusion.  Accordingly, summary judgment is not
12 warranted.
13       IT IS THEREFORE ORDERED that defendants' motion for
14 summary judgment be, and the same hereby is, DENIED.
15 DATED: November 2, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

13